IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| FREDRICK "GUY" BERNDT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-1067-WEB-KMH |
| | ) | |
| ROBERT A. LEVY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant Robert A. Levy, by and through counsel, and hereby submits his Reply Memorandum in Support of his Motion for Partial Summary Judgment.

**I.     INTRODUCTION**

Defendant's Motion asks the Court to examine whether Plaintiff can carry his burden in establishing a prima facie case for attorney malpractice. Namely, whether Plaintiff has established that the judgment he would have allegedly collected in the underlying medical malpractice case would have been collectible, so as to establish that he sustained actual loss or damage as a result of Defendant's alleged negligence. Furthermore, this Motion asks the Court to rule as a matter of law that the workers' compensation lien that would have operated to reduce Plaintiff's net recover in the underlying case be applied to and limit the damages Plaintiff now seeks from Defendant. Partial Summary Judgment should be entered on these grounds, as discussed herein.

## II.     REPLY TO PLAINITFF'S RESPONSE TO DERFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. Uncontroverted.

5. Uncontroverted.

6. Uncontroverted.

7. It is uncontroverted that Defendant Levy was retained to represent Plaintiff Berndt. The other facts set forth by Plaintiff are immaterial to Defendant's Motion, as the precise date in which the representation was formed or the circumstances surrounding it are immaterial to the issues at hand.

8. Uncontroverted.

9. Uncontroverted.

10. Defendant concurs with Plaintiff's more detailed recitation of the procedural history of the underlying case. Furthermore, the precise history is immaterial to this Motion.

11. Plaintiff controverts this fact solely on legal grounds, which is an issue in the substantive part of Defendant's Motion and does not operate to controvert this fact or deter addressing the Motion on its merits.

12. Plaintiff controverts this fact solely on legal grounds, which is an issue in the substantive part of Defendant's Motion and does not operate to controvert this fact or deter addressing the Motion on its merits.

13. Uncontroverted.

14. Uncontroverted.

15. It is uncontroverted that Plaintiff filed the instant case against Defendant and has alleged legal malpractice therein.

16. Defendant acknowledges that Plaintiff may be seeking damages in addition to those identified by Defendant in this fact. Plaintiff does not actually controvert the substance of fact 16 and it remains uncontroverted.

17. Uncontroverted.

### III. RESPONSE TO PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS

1. Uncontroverted and immaterial to this Motion.

2. A. Plaintiff misstates Brave's deposition testimony. Brave did not testify that Dr. Kramer would have admitted a departure to the standard of care. Instead, Brave only testified that if he were the decision maker regarding litigation strategy in defending the case, which he wasn't, that he would have defended the underlying case on causation. (Brave Dep. 84:12-85:12, Plaintiff's Exhibit 8). Regardless, this fact is immaterial to Defendant's Motion.

B. Affiant Brave does not state in his affidavit that he has personal knowledge regarding Dr. Gary Kramer's financial condition. Brave's conclusory statement that he is unaware of a particular circumstance that would have prevented Dr. Kramer from satisfying an excess judgment is a conclusory statement, without any stated factual basis and insufficient to establish the actual financial condition of the defendant in the underlying case.

3. Affiant Levy does not state in his affidavit that he has any actual, personal knowledge regarding Dr. Gary Kramer's financial condition. Levy's conclusory

statement that he believes Dr. Kramer could have satisfied a judgment of $2,479,000 is conclusory, without any stated factual basis, and insufficient to establish the actual financial condition of the defendant in the underlying case.

4. This fact is uncontroverted, however, Defendant points out that one million dollars of the amount represents damages for pain, suffering, mental anguish and loss of enjoyment, which would be capped at $250,000. Regardless, this fact is immaterial to this Motion.

5. Defendant Levy expressly denies Plaintiff's assertion that he had a claim in excess of $800,000 in the underlying case. However, the amount of damages claimed by Plaintiff in the underlying case is immaterial to this Motion.

6. Uncontoverted.

7. Uncontroverted.

8. Defendant denies that Dr. Kramer's PLICO Insurance records demonstrate that he had three million in coverage from 2002 to 2004 and two million in coverage in 2005. Instead, they demonstrate that he had three million in coverage in 2002 to 2003, two million in coverage in 2004 and one million in coverage per incident in 2005. (Plaintiff's Exhibit 18). The remaining allegations set for in Plaintiff's paragraph 8 are uncontroverted. However, the amount of Dr. Kramer's insurance policy in Oklahoma is inapplicable because it does not cover the incident at issue in the underlying case and did not provide a basis for paying a judgment in that case.

9. Uncontroverted.

10. Controverted hearsay, since the Kramer's could have filed bankruptcy in other jurisdictions and further filing bankruptcy has no bearing on the collectibility of a judgment against Dr. Kramer.

11. Controverted. A U.S. Bureau of Labor Statistics print out that provides the purported average wage for a surgeon is inadmissible hearsay and cannot be used to establish the likely wage of Dr. Kramer, as it would be subject to multiple hearsay objections.

12. Controverted. Oklahoma wage surveys are inadmissible hearsay and could not be used in this case without foundation and testimony, likely and expert witness of which none were identified, to establish the likely was of Dr. Kramer.

13. Controverted. A U.S. Bureau of Labor Statistics print out that provides the purported average wage for a surgeon is inadmissible hearsay, requiring foundation testimony, likely of an expert witness who has not been identified, and it cannot be used to establish the likely wage of Dr. Kramer.

**IV.   ARGUMENT AND ANALYSIS**

**A.   Plaintiff's damages are limited to those he would have *actually* recovered in the underlying case, because he is only entitled to be placed in the position he would have been but for Defendant's alleged negligence.**

It is well settled that in order to establish a prima facie case for attorney malpractice, the Plaintiff must establish (1) the existence of an attorney-client relationship, which gives rise to a duty, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) **actual** loss or damage. Canaan v. Bartee, 72 P.3d 911, 914 (Kan. 2003); Miller v. Sloan, Listrom, Eisenbarth,

Sloan & Glassman, 978 P.2d 922, 930 (Kan. 1999) (emphasis added).  In cases involving the alleged negligent handling of underlying litigation, where the plaintiff alleges that he would have succeeded in obtaining a judgment in the underlying case, but for the attorney defendant's negligence, the plaintiff must also establish that:  (1) the underlying claim is valid, (2) plaintiff would have received a favorable judgment but for the attorney's error, and (3) the judgment was collectible.  Webb v. Pomeroy, 655 P.2d 465, 467-68 (Kan. 1983).  The Kansas pattern jury instructions also make this clear, as PIK 123.41 explicitly requires plaintiff to establish that but for the negligence of the attorney defendant, "the prior lawsuit would have resulted in a **collectible judgment** in plaintiff's favor."  (emphasis added).  The rationale for such law is simple.  A plaintiff's damages in an attorney malpractice action should be limited to only those damages that he could have walked away with in the underlying case.  Plaintiff disputes this clear law.

In Plaintiff's Response, Plaintiff makes several statements that actually illustrate why Plaintiff has the burden to establish that the judgment in the underlying case would have been collectible.  As Plaintiff stated in his brief, he is entitled to recover for the loss he sustained as a result of Defendant's alleged malpractice and he should be placed in the position he would have been if the injury had not occurred.  (See pages 16 and 17 Plaintiff's Response Memorandum).  These statements do no run contrary to the premise of Defendant's Motion; instead, it emphasizes the point.  Plaintiff must establish that any favorable judgment obtained by him in the underlying case would be collectible, because any other result would overcompensate Plaintiff for the alleged negligence of the attorney Defendant.

For example, if a plaintiff would have obtained a five-hundred thousand dollar judgment in the underlying case, but that judgment would not be collectible because it came from an insolvent defendant in that case, it would be unfair to allow the Plaintiff to sue his attorney and recover a greater sum than he would have been able to in the underlying case.  In other words, it is simply contrary to the intent of the law to allow a plaintiff to sue his attorney and obtain _more_ money than he would have in the underlying case.  That is not placing the party in the same position he would have been but for the alleged negligence; it is putting the party in a _better_ position because of the negligence.  To do so would run contrary to the purpose of a legal malpractice claim, which is to put the plaintiff in the same position that the plaintiff would have been in had the attorney competently performed in the underlying case.  See e.g.,  7A C.J.S. Attorney & Client § 335 (citing Packard-Bamberger & Co., Inc. v. Collier, 771 A.2d 1194, 1202 (N.J. 2001)).

Plaintiff relies on the fact that there has not been an opinion rendered by a Kansas appellate court in an attorney malpractice case that explicitly states that the Plaintiff has a burden to prove that the underlying judgment would have been collectible as support for his position that collectibility is not a requirement.  This is not the case.  First, Plaintiff ignores the plain language of PIK, the Kansas jury instructions, which explicitly states that Plaintiff must prove that the judgment would have been collectible.  Second, Plaintiff ignores the fact that collectibility will not necessarily be an issue in _all_ attorney malpractice cases; thus, it may not necessarily be at issue or need to be addressed in a particular case.  For example, Kansas courts have explicitly acknowledged that collectibility is not a requirement, for example, in cases involving a failed settlement, where instead the Plaintiff must establish that but for the negligence the case would have

settled for a specific, ascertainable amount. See e.g., McConwell v. FMG of Kansas City, Inc., 18 Kan. App. 2d 839, 844-45, 861 P.2d 830 (1993) (quoting Whiteaker v. State, 382 N.W.2d 112, 115-16 (Iowa 1986)). However, in cases that involve the mishandling of underlying litigation, such as the case here, collectibility is a requirement.

Further still, Plaintiff ignores that collectibility is an explicit element in each case cited by him. In order to establish a prima facie case for attorney malpractice, the plaintiff must establish that the attorney was negligent and that such negligence caused the plaintiff *actual* damages. See, Phillips v. Carson, 240 Kan. 462, 731 P.2d 820 (1987); McConwell v. RMG of Kansas City, Inc., 18 Kan. App. 2d 839, 845, 861 P.2d 830 (1993) (both cited by Plaintiff). Again, the reason a plaintiff has to establish *actual* damage as an element of his prima facie case, as opposed to just theoretical damages, is that it is contrary to the law to allow a party to recover for speculative damages. A party should not be able to get more money by suing their attorney than they would have been able to recover from a defendant in the underlying case. In cases involving whether a plaintiff would have actually incurred damages in an underlying litigation, collectibility is necessarily an issue.

Next, Plaintiff argues that since there are no Kansas cases that specifically define exactly what a plaintiff may be required to show to prove collectibility of the underlying judgment that it must not be a requirement under Kansas law. Practitioners that have been practicing law in Kansas for any amount of time learn quickly that there is not always a precise case or point of law to provide specific guidance to a plaintiff on exactly how to prove his or her case. The fact remains there is clear and explicit language in

Kansas case law and PIK 123.41 that requires plaintiff to prove collectibility of the underlying judgment.

Finally, Plaintiff argues that collectibility of a judgment should be irrelevant in any negligence case. Plaintiff uses the underlying medical malpractice case against Dr. Kramer as an example. It is true that collectibility is not a requirement in a run of the mill negligence case. However, in an attorney malpractice case that involves the alleged mishandling of an underlying case, collectibility is at issue. As stated repeatedly, in order to place the plaintiff in an attorney malpractice case in the position he would have been in but for the attorney's negligence in the underlying case, the actual and specific amount of damages that the plaintiff could have collected is essential. Plaintiff's damages in the instant case can only rise to the level and amount of money that he would have walked away with or pocketed in the underlying case. Any other result would allow a plaintiff a windfall. By way of example, had a plaintiff obtained an uncollectible judgment from a defunct corporation in an underlying case, the plaintiff would not have been actually damaged to any monetary extent in that case, because he could never have recovered anything in that case, regardless of the attorney's alleged negligence. Clearly, the damages in an attorney malpractice case are unlike those in an ordinary negligence case, because damages in an attorney malpractice case necessarily require an examination of the would be outcome of an underlying case.

**B.    Plaintiff cannot establish that he would have been able to recover a judgment in excess of Dr. Kramer's insurance policy in the underlying case.**

Plaintiff's attempt to create facts to establish that Dr. Kramer could have satisfied an excess judgment is far-fetched, at best. This is an incredulous argument, which hardly

necessitates a response by Defendant. To submit two attorneys' affidavits to suggest that Dr. Kramer was "well off", without any factual basis or financial records, is absurd. This rank speculation is totally unsupported hearsay. In fact, Mr. Brave testified during his deposition that met Dr. Kramer in person for the very first time at the time of Dr. Kramer's deposition in the underlying medical malpractice case. (See Plaintiff's Exhibit 8). Interestingly, Mr. Jerry Levy indicates that he has had other cases involving Dr. Kramer, yet neither he nor Plaintiff offer any factual evidence in any form, deposition testimony or otherwise, to establish that Mr. Levy had any personal knowledge of Dr. Kramer's independent wealth or lack thereof. Instead, both Mr. Brave and Mr. Jerry Levy can only offer an absence of any knowledge of financial hardship for a man they barely knew, and of whom there is no evidence they knew personally, as evidence for the affirmative financial well-being of the man. Just because a court reporter has never seen an attorney who has appeared before her cough or sneeze does not mean that she could provide testimony that the attorney in question had never had a cold. The absence of personal knowledge, or event the unsubstantiated personal belief, is not sufficient to establish an affirmative fact or even create controverted evidence.

Contrary to Jerry Levy's affidavit, attached are Exhibits A and B, wherein Mr. Levy has stated that he was willing to settle the underlying medical malpractice case at or below Dr. Kramer's Health Care Stabilization coverage of $800,000. These documents lend no credibility to Jerry Levy's affidavit and in fact suggest that he believed $800,000 was the maximum potential recovery in the underlying case.

Plaintiff further attempts to establish that a verdict in excess of Dr. Kramer's Healthcare Stabilization Fund coverage would have been collectible because of "average

wage" as an orthopedic surgeon, which Plaintiff attempts to establish through a generic wage survey, somehow equates to him possessing assets or having the financial wherewithal to satisfy a judgment in excess of $800,000. Again this evidence is both a stretch and is unsubstantiated hearsay. Plaintiff's efforts to utilize hearsay documentation that is not specific to Dr. Kramer or even an individual in like circumstances would only be admissible with appropriate expert witness testimony, if even relevant, of which Plaintiff has not identified in this case. Even then, it is pure speculation to assume that an individual who makes over a certain salary will automatically have assets or savings sufficient to establish what Plaintiff's have contended is an excess verdict of between one and two million dollars.

Interestingly, Plaintiff has never sought out the deposition testimony of Betsy Kramer or any other individual who would have actual, personal knowledge and could be a direct source of information about the financial well-being of Dr. Kramer during the time period of the underlying litigation. Plaintiff's effort to bootstrap speculative, non-specific, hearsay evidence, and to do so post-discovery, does not satisfy their burden on this critical element regarding collectibility. Plaintiff's efforts to create controverted evidence out of rank hearsay and speculation on this issue should not be a basis upon which the Court denies this Motion. What Mr. Brave or Mr. Jerry Levy may have thought about Dr. Kramer's personal wealth is wholly irrelevant and grossly speculative, and it cannot form the basis for Plaintiff to establish that an underlying judgment would have been collectible. This would be no different than asking Mr. Brave and Mr. Jerry Levy to speculate about Dr. John Gilbert's, Dr. Naomi Shield's, or Dr. Michael

Baughman's, all physicians involved in the underlying case, personal wealth of which they cannot do without specific underlying knowledge of their financial condition.

**C.  Evidence that a workers' compensation lien would have operated to reduce a judgment in an underlying case is admissible in an attorney malpractice case because it is necessary to establish the amount of actual damages a party sustained.**

Plaintiff contends, in response to Defendant's Motion, that evidence of the nature and extent of the workers' compensation benefits Plaintiff received is inadmissible in the attorney malpractice action because they are a collateral source.  However, in making such an argument, Plaintiff ignores an important distinction.  While Plaintiff's workers compensation benefits would have been a collateral source in the underlying medical malpractice case, they are not so in the attorney malpractice case.  In the attorney malpractice case the evidence of the workers' compensation benefits and associated lien have an independent basis for admissibility because they speak to the collectibility of the judgment in the underlying case and therefore to the amount of Plaintiff's *actual* damages.

Plaintiff's citation of and reliance on the Johnson v. Baker case and the article by defense counsel that provides a general survey of Kansas cases discussing attorney malpractice law is misplaced because the instant case is distinguishable.  In Johnson, an attorney was being sued for the alleged mishandling of a divorce case, in which the plaintiff in the subsequent malpractice suit was seeking support and educational expenses for a college age child.  11 Kan. App. 2d 274, 278, 719 P.2d 752, 756 (1986).  The damages sought in the attorney malpractice case were for the support and specific

expenses the plaintiff alleges she should have obtained from the ex-spouse in the underlying case to pay for the child's college expenses.  In the subsequent attorney malpractice case, the attorney argued that the damages against him should be reduced by the amount of the scholarship and the court declined, finding that the scholarship was a collateral source.  Notably, there was no indication that the scholarship would have operated to reduce the ex-spouses obligation in the underlying case or that the scholarship would have impacted the "actual recovery" or damages from the underlying case.  This is distinctly different from the case at hand.  In Johnson, had the attorney not been negligent, the spouse would have received a specified sum to support the child.  That amount of support the client was not able to get in the underlying case was the actual damage the client sustained.  The scholarship was an independent source of income, of which there is no evidence of consideration in the underlying case or of impact on the amount sought in the underlying case. In other words, had the case been handled properly, there is no evidence it would have impacted the actual damages or amount received in the underlying case, only the damages in the subsequent attorney malpractice action.

Contrarily, in this case, the actual amount of damages that the plaintiff sustained as a result of Defendant's alleged negligence is the amount of the judgment that he would have collected in the underlying case, reduced by the amount of the workers' compensation lien. Had the underlying suit been timely filed, the workers' compensation carrier would have collected on its lien.  If Plaintiff would have recovered $300,000, that amount would have then been reduced by at least $258,633.43, the minimum amount of the lien.  Thus, had Plaintiff prevailed in the underlying case, Plaintiff would have

walked away with the amount of the judgment less the amount of the lien. Allowing Plaintiff to recover a sum greater than that now would result in a windfall to Plaintiff and would put him in a *better* position with the attorney's alleged malpractice than without it. While this may be ordinarily permissible in a case involving payment from a collateral source, it is not the case here because the collateral source impacted the actual recovery in the underlying case. The issue is the amount to which the plaintiff was actually damaged or the amount of the judgment that would have been collected or received by Plaintiff, which is an explicit element in the attorney malpractice action. Because the workers' compensation lien in the underlying case impacts Plaintiff's actual damages, the evidence has independent significance and is admissible in the attorney malpractice case.

Although this important distinction has not come before and been decided by Kansas courts, other jurisdictions have examined the precise situation at hand and found that evidence of the workers' compensation lien in the attorney malpractice case is admissible. Notably, Plaintiff cites no cases, involving like facts, to the contrary, focusing instead on the general rule only. Both cited and explained in detail in Defendant's Memorandum in Support of his Motion for Partial Summary Judgment, the First Circuit and the Illinois Supreme Court have examined this issue and adopted the very position advocated by Defendant here. See Moores v. Greenburg, 834 F.2d 1105 (1st Cir. 1987) (applying Maine law); Eastman v. Messner, 721 N.E.2d 1154 (Ill. 1999). The rationale for these decisions was simple, the worker should be put in "the same position he would have been in had there been no breach" by limiting his damages to the amount he would have actually retained in the underlying case. Moores, 834 F.2d at 1110. Likewise, in Eastman, the court noted that "the damages the employee would be

legally entitled to retain in the underlying tort action equals the total damage award reduced by the amount of the workers compensation benefits paid." 721 N.E.2d at 1158. These decisions are not contrary to Kansas law; they are actually in harmony with it.

In this case, the workers' compensation benefits that Plaintiff received, in conjunction with the injury that formed the basis for the underlying medical malpractice case, would have directly and substantially impacted Plaintiff's ultimate recovery in that case. Had the case been filed or found to be filed within the applicable statute of limitations, and if Plaintiff had obtained a judgment in the underlying case, the workers' compensation carrier would have had a claim to that judgment. The carrier would have had a claim not only for the sum it had already paid, but would have retained an interest in the recovery because Plaintiff's workers' compensation benefits for medical expenses remains open, even to this day, entitling Plaintiff to continue to have his medical expenses paid for. Because the carrier's interest would have been applied to any judgment by Plaintiff in the underlying case in order to preclude duplicative recovery to the Plaintiff, Plaintiff's net damages or the amount he actually would have retained would have been an amount less then the judgment he received. As set forth above, Plaintiff should be entitled to no greater a sum in this case.

## V. CONCLUSION

As set forth herein, Defendant is entitled to partial summary judgment on the issue of damages. Plaintiff is unable to establish that the judgment in the underlying case medical malpractice case would have been collectible beyond Dr. Kramer's insurance policy. Furthermore, any recovery by Plaintiff in the underlying case would have been reduced by the workers' compensation lien, thereby reducing Plaintiff's *actual* damages.

The same is true for future medical expenses, which Plaintiff is entitled to receive through workers' compensation for the remainder of his life. Thus, the actual damages that Plaintiff sustained and that should be assessed against Defendant if Plaintiff is able to establish his case against Defendant is the amount a jury finds he would have recovered in the underlying case less the amount of the lien, as well as future medical expenses.

        McANANY, VAN CLEAVE & PHILLIPS, P.A.
        5125 Roe Boulevard, Suite 200
        Roeland Park, Kansas 66205
        (913) 371-3838
        (913) 262-1791 – facsimile

        /s/ Daniel F. Church
        Daniel F. Church       # 12100
        Rachel E. Rolf        #23475

        *Attorneys for Defendant Robert A. Levy*

## CERTIFICATE OF SERVICE

The undersigned states that on this 16th day of November, 2009, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Thomas M. Warner, Jr.
Anne H. Pankratz
WARNER LAW OFFICES, P.A.
310 West Central, Suite 110
Wichita, KS 67202

*Attorneys for Plaintiff Fredrick "Guy" Berndt*

        /s/ Daniel F. Church
        Daniel F. Church